**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

```
_____
                              :
THOMAS WILLIS,                :      Civil No.: 11-2077 (NLH)
                              :
            Petitioner,       :
                              :
        v.                    :          O P I N I O N
                              :
WARDEN DONNA ZICKEFOOSE,      :
                              :
            Respondent.       :
_____:
```

**APPEARANCES:**

> THOMAS WILLIS, Petitioner <u>Pro</u> <u>Se</u>
> #50373-037
> F.C.I. Fort Dix
> East P.O. Box 2000
> Fort Dix, NJ 08640
>
> PAUL A. BLAINE, AUSA
> OFFICE OF THE U.S. ATTORNEY
> Camden Federal Bldg. & U.S. Courthouse
> 401 Market Street, 4th Floor
> Camden, New Jersey 08101
> Counsel for Respondent

**HILLMAN**, District Judge

On or about April 12, 2011, petitioner, Thomas Willis ("Petitioner"), filed this petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241, in which he challenges sanctions imposed as the result of a prison disciplinary infraction. Petitioner asks the Court to expunge the disciplinary action imposed against petitioner. The named respondent is FCI Fort Dix Warden Donna Zickefoose. Respondent answered the petition on

September 14, 2011, and provided a copy of the pertinent administrative record.  (Docket Entry No. 6).  Petitioner has not filed a traverse or reply to the Warden's answer.

## I.   BACKGROUND

Petitioner challenges a November 28, 2009 prison disciplinary finding, which resulted in the loss of 27 days good conduct time ("GCT") and 60 days loss of commissary, telephone and visitation privileges.  Petitioner seeks to have the disciplinary record expunged and his GCT restored.

Petitioner is presently serving a 57-month prison sentence imposed by the United States District Court for the District of Maryland, on September 21, 2009, following his conviction for possession with intent to distribute five (5) grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1), and for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).  Petitioner's projected release date is January 13, 2013, assuming he receives all good conduct time ("GCT") available to him under 18 U.S.C. § 3624(b).  (See Declaration of Tara Moran, Exhibit 1).

The incident at issue in this habeas petition occurred on November 28, 2009 at the FCI Fort Dix.  Petitioner was issued an incident report, number 1948924, that same date, charging him with Engaging in a Sexual Act, Code 205, and Conduct with a

2

Visitor in Violation of BOP Regulations, Code 407.  In

particular, the report stated, as follows:

> At approximately 2:15 p.m. on November 28, 2009, I was
> working as Visiting Room Officer 2.  While observing the
> camera in the visiting room, I observed inmate Wills, Thomas
> register number 50373-037 with the fly of his pants
> unbuttoned and his female visitor had her hands in his pants
> rubbing his genital area in a back and forth motion.

(Incident Report, Moran Decl., Exhibit 4 at ¶ 11).

The incident report was prepared on November 28, 2009, at

3:00 p.m., and delivered to Petitioner that same day at 3:07 p.m.

(Moran Decl., Ex. 4 at ¶¶ 12-16).

The incident report indicates that an investigation or

interview of Petitioner began on November 28, 2009 at 3:10 p.m.

The investigating officer read Petitioner his rights.  Petitioner

stated that he understood his rights and made a statement to the

investigator, Activities Lieutenant M. Holterman, as follows:

"She was messing with the buttons on my pants and attempting to

button them."  The interview/investigation concluded at 3:30 p.m.

and the investigating officer referred the matter to the Unit

Disciplinary Committee ("UDC").  (Moran Decl., Ex. 4 at Part III-

Investigation, ¶¶ 22-27).

The initial hearing was conducted before the UDC on December

1, 2009.  (Moran Decl., Ex. 4 at ¶ 21).  The hearing was held

within the typical three working day time period.   At the UDC

hearing, Petitioner denied the report to be true.  (Moran Decl.,

Ex. 4 at ¶ 17).  At the conclusion of the UDC hearing, the UDC

referred the incident report to the Disciplinary Hearing Officer ("DHO") for disposition.  (Moran Decl., Ex. 4 at ¶ 20).

On December 1, 2009, Petitioner was advised of his rights before the DHO hearing, which was held on December 7, 2009.  At the hearing, the DHO Report indicates that Petitioner waived his right to a staff representative and that Petitioner declined to call any witnesses.  (Moran Decl., Ex. 5, DHO Report at Sections I.A, I.B, II.A and III.C.1).  Petitioner denied the charges before the DHO.  The DHO report summarized Petitioner's statement at the hearing as follows: "I had left from the room to use the rest room.  She was telling me that my pants were unbuttoned and pointing to tell me that my pants were unbuttoned.  I left and went back to see the Lt.  I seen Lt. Kaough and he reviewed the tape."  (Id., Ex. 5 at Section III.B).  The only documentary evidence relied upon by the DHO was a Memorandum dated November 28, 2009, submitted by M. Autry, Correctional Officer.  (Id., Ex. 5 at Section III.D).

At the conclusion of the hearing, the DHO found that Petitioner had committed the act as charged.  (Moran Decl., Ex. 5 at Section IV.A).  The DHO set forth his finding as follows:

> As DHO I find on or about November 28, 2009, at approximately 2:15 p.m., you were engaged in a Sexual Act, and violating visiting regulations, at the Federal Correctional Institution, Fort Dix, New Jersey.
>
> This decision is based on the greater weight of evidence provided before me which is documented in the written report

provided by the reporting employee. The employee documented the following:

"At approximately 2:15 pm on November 28, 2009, I was working as Visiting Room Officer 2.  While observing the camera in the visiting room, I observed inmate Wills, Thomas register number 50373-037 with the fly of his pants unbuttoned and his female visitor had her hands in his pants rubbing his genital area in a  back and forth motion."

The DHO took into consideration your statements, specifically, "I had left from the room to use the rest room.  She was telling me that my pants were unbuttoned and pointing to tell me that my pants were unbuttoned."  I found you have every reason to make this assertions in an effort to have the charge against you expunged.  Essentially, you have everything to gain and nothing to lose in that effort however, I found the employee involved in this incident to be more credible than yourself as he has no vested interest in you, outcome of the report, and does have a legal obligation to be truthful.

Considered also was the statement you made to the investigating Lt., specifically, "She was messing with the buttons on my pants and attempting to button them."

Also considered was the memorandum written by M. Autry, specifically, "At approximately 2:15 pm in the West Visiting room inmate Wills 50373-037 was seen on camera by myself and Officer Shipp.  Wills 50373-037 was engaging in a sexual act with his visitor in violation of BOP regulations.  His visitor had her hand through the front of his unbuttoned pants, she was massaging his genitals in a back and forth motion."  This corroborates the incident report.

The violation of Prohibited act Code 205, Engaging in a sexual act, is supported by the incident report, specifically, "While observing the camera in the visiting room, I observed inmate Wills, Thomas register number 50373-037 with the fly of his pants unbuttoned and his female visitor had her hands in his pants rubbing his genital area in a  back and forth motion."

The violation of prohibited act 407, Violating Visiting Regulations, is supported in the incident report, specifically, "At approximately 2:15 pm on November 28, 2009, I was working as Visiting Room Officer 2.  While observing the camera in the visiting room, I observed inmate

> Wills, Thomas register number 50373-037 with the fly of his
> pants unbuttoned and his female visitor had her hands in his
> pants."
>
> Based on the greater weight of evidence provided before me,
> your actions are consistent with violation of Prohibited Act
> Code 205: Engaging in a Sexual Act, and Code 407, Violating
> Visiting Regulations.

(Moran Decl., Ex. 5 at Section V).

On the Code 205 violation, the DHO sanctioned Petitioner to

30 days disciplinary segregation, suspended 180 days pending

clear conduct; disallowance of 27 days GCT, and 60 days loss of

commissary and telephone privileges.  (Moran Decl., Ex. 5 at

Section VI).  As to the Code 407 violation, the DHO sanctioned

Petitioner to a loss of visiting privileges for 90 days from

December 7, 2009 to March 6, 2010.  (Id.).  The DHO Report set

forth the reasons for the sanctions imposed as follows:

> The action on the part of any inmate to become involved in a
> sexual act threatens the health, safety, and welfare of not
> only himself but of all persons, whether another inmate or
> any other person, are involved in the act.  Sexual activity
> in a correctional setting, cannot be tolerated.  The BOP has
> a obligation to the inmates, staff, and members of the
> general public to prevent and deter this type of conduct.
>
> Disciplinary Segregation, suspended, Disallowance of Good
> Conduct Time and the loss of Privileges Sanction, being your
> commissary, telephone and visiting, are meant to demonstrate
> the seriousness of the offense to you as well as everyone
> incarcerated in this facility.

(Id., Ex. 5 at Section VII).

A copy of the DHO Report was given to Petitioner on December

23, 2009.  (Id., Ex. 5 at Section IX).  On or about January 7,

2010, Petitioner appealed the DHO's findings to the BOP's

6

Northeast Regional Office.  In his administrative appeal,
Petitioner argued for the first time that his due process rights
were violated because the DHO ignored Petitioner's request to
review the visiting room security camera video tape footage as
evidence.  (Moran Decl., Exhibit 2, Part A).  On February 12,
2010, the Regional Director responded as follows:

> You appeal the December 7, 2009 decision of the Discipline
> Hearing Officer (DHO) at FCI Fort Dix, finding you committed
> the prohibited acts of Engaging in a Sexual Act and Conduct
> With a Visitor in Violation of Bureau Regulations, Codes 205
> and 407, Incident Report No. 1948924.  You contend the DHO
> failed to consider documentary evidence in support of your
> defense.  Specifically, you state the videotape of the
> incident proves you did not engage in sexual activity.  You
> state failure to review the videotape was a violation of
> your due process rights and Bureau regulations.  You request
> to have the incident report expunged and restoration of all
> privileges.
>
> A review of the disciplinary proceedings revealed questions
> regarding the evidence used to support Code 407.  Therefore,
> the disciplinary action is being remanded for further
> review.  You will be advised of the time and date of further
> proceedings.  After further proceedings, you may appeal
> again to this office if you desire.  Your appeal is
> partially granted.

(Moran Decl., Ex. 2, part B - Response).

Pursuant to the remand, a re-hearing was conducted by the
DHO on April 27, 2010.  (Moran Decl., Ex. 6, Inmate Discipline
Data).  The April 27, 2010 DHO Report shows that it "is an
amended DHO report in accordance with the remand from appeal
number 573163-R1."  (Id., Ex. 7 at Section III.B).  At the re-
hearing, Petitioner again denied the charges, saying that he
"thought both charges [Code 205 and Code 407] were dismissed."

7

(Id.).  According to the April 27, 2010 DHO Report, the "DHO explained [to Petitioner] that the Code 205 will be upheld and all original sanctions for that act will remain in effect.  The suspended sanction is still in effect from the original date of the hearing December 7, 2009.  The Code 407 will be expunged. All sanctions from that act will be removed."[1]  (Id.).

The DHO further stated that the "body of the incident will not be re-written in support of the violation of Code 407, and there is no additional evidence therefore in accordance with the appeal number 573163-R1 the prohibited act Code 407 is expunged." (Id., Ex. 7 at Section V).

Interestingly, there is no mention in the DHO Report that Petitioner requested to review or present any videotape evidence. On September 13, 2011, the DHO Anthony C. Boyce executed a Declaration stating that it is his practice to make a notation on the DHO Report if an inmate asks to review any documentary evidence.  (Declaration of Anthony C. Boyce at ¶ 3).  Because in this instance there is no such notation on the DHO Report, Boyce states that it is his belief that Petitioner did not ask to review the videotape prior to or during the DHO hearing.  (Id., ¶ 3).

---

[1]  The 90 days loss of visiting privileges was thus removed from the sanctions to be imposed.

The Government further points to the administrative record that Petitioner did not properly seek administrative appeal from the April 27, 2010 DHO decision.  In particular, on May 26, 2010, Petitioner appealed his second DHO hearing directly to the BOP's Central Office instead of the appropriate Regional Office.  The Central Office rejected Petitioner's administrative appeal on June 18, 2010, as untimely.  Petitioner was instructed to obtain staff verification on BOP letterhead confirming that the untimeliness was not his fault.  Petitioner refiled his appeal on July 30, 2010, but he did not obtain the staff verification on BOP letterhead as directed.  Consequently, the refiled administrative appeal was again rejected as untimely on August 12, 2010.  (Moran Decl., ¶ 6, Ex. 3; Petitioner's Exhibits 9 and 10).

It would appear from the documentation provided that Petitioner's second administrative appeal was processed by the BOP's Central Office under the Remedy ID numbers 573163-A1 and 573163-A2, which were the same ID numbers assigned to Petitioner's first administrative appeal.  (Moran Decl., Ex. 2 and Petition Exs. 5, 6).  Consequently, it would seem that the Central Office rejected the administrative appeal as untimely without realizing it was an appeal of Petitioner's second DHO decision.

Thereafter, on September 3, 2010, Petitioner filed an appeal from the second DHO hearing with the Regional Office, which was denominated as Remedy ID no. 573163-R2.  The Regional office rejected the appeal as untimely on September 8, 2010, because the re-hearing had been held on April 27, 2010.  Petitioner resubmitted his administrative appeal on September 27, 2010, and it was given Remedy ID no. 608951-R1.  (Moran Decl., ¶ 6 at Ex. 3, pp. 5, 6).  The appeal again was rejected as untimely because the re-hearing had been held on April 27, 2010, Petitioner had received a copy of the DHO report on May 28, 2010, and his appeal was not filed with the Regional Office until September 3, 2010.

Petitioner filed this habeas petition on or about April 12, 2011.  The Government responded to the petition on September 14, 2011, and attached the relevant administrative record.  Petitioner did not file a traverse or reply to the Government's answer.

The petition asserts that Petitioner's due process rights were violated because Petitioner was unfairly prevented from pursuing redress of his grievance when the BOP staff improperly obstructed his administrative remedy process.

The Government argues that habeas relief should be denied because Petitioner failed to properly exhaust his administrative remedies.  The Government also contends that Petitioner was

afforded all the due process to which he was entitled under the Constitution.

## II.   DISCUSSION

A.   Standard of Review

Petitioner seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241(c)(3).[2]  That section states that the writ will not be extended to a prisoner unless "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

---

[2]  United States Code Title 28, Section 2241, provides in pertinent part:

(a) Writs of habeas corpus may be granted by the district courts within their respective jurisdictions

(c) The writ of habeas corpus shall not extend to a prisoner unless-   (3) He is in custody in violation of the Constitution or laws or treaties of the United States.

11

B.  <u>Applicable Regulations</u>

The Federal Bureau of Prisons ("BOP") has specific
guidelines for inmate disciplinary procedures, which are codified
at 28 C.F.R. § 541.10 <u>et seq</u>.  Prohibited acts are categorized
according to the severity of the conduct.  Code Level 100s are
deemed the "Greatest", code level 200s as "High", and proceeding
to 400 level codes as "Low Moderate."  The Prohibited Acts Code
and Disciplinary Severity Scale is set forth at 28 C.F.R. §
541.13 Tables 3-5.  Incident reports are prepared in accordance
with § 541.14 and are referred to the UDC for an initial hearing
pursuant to § 541.15.

The UDC hearing is typically conducted within three working
days of the incident, but may be extended for good cause pursuant
to § 541.15(b) and (k).  The UDC may refer the matter to the DHO
for further proceedings pursuant to § 541.15(f).  In this case,
referral of the incident report to the DHO was mandatory under §
541.13(a)(2), because the charge was designated as a "High"
category offense and the UDC does not have the authority to
disallow good conduct time.  Disallowance of good conduct time
credits for high category offenses, pursuant to Sanction B.1 in
Table 3, must be imposed under 28 C.F.R. § 541.13(a)(2).

DHO hearing procedures are set forth at § 541.17.  These
procedures require the following: (a) 24-hour advance written
notice of charge before inmate's initial appearance before the

DHO; this right may be waived, § 541.17(a); (b) an inmate shall be provided a staff representative at the DHO hearing, if so desired, § 541.17(b); (c) an inmate is entitled to make a statement and to present documentary evidence at the DHO hearing; the inmate may also call witnesses to testify on his behalf, but may not himself question the witnesses, § 541.17(c); (d) the inmate is entitled to be present throughout the hearing, except during a period of deliberation or when institutional security would be jeopardized, § 541.17(d).  The DHO shall prepare a record of the proceedings that documents the advisement of the inmate's rights, the DHO's findings, the DHO's decision, the specific evidence relied upon by the DHO, and a brief statement of the reasons for imposition of sanctions.  28 C.F.R. § 541.17(g).  A written copy of the DHO's decision and disposition must be provided to the inmate ordinarily within 10 days.  Id.

These procedures are intended to meet or exceed the due process requirements prescribed by Wolff v. McDonnell, 418 U.S. 539 (1974).  See Von Kahl v. Brennan, 855 F. Supp. 1413, 1418 (M.D. Pa. 1994).

C.  Exhaustion of Administrative Remedies

As an initial matter, Respondent argues that Petitioner did not fully exhaust his administrative remedies before filing this habeas petition.  Although 28 U.S.C. § 2241 contains no statutory exhaustion requirement, a federal prisoner ordinarily may not

13

bring a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging the execution of his sentence, until he has exhausted all available administrative remedies.  See, e.g., Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000); Arias v. United States Parole Comm'n, 648 F.2d 196, 199 (3d Cir. 1981); Soyka v. Alldredge, 481 F.2d 303, 306 (3d Cir. 1973).  The exhaustion doctrine promotes a number of goals:

> (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy.

Goldberg v. Beeler, 82 F. Supp.2d 302, 309 (D.N.J. 1999), aff'd, 248 F.3d 1130 (3d Cir. 2000).  See also Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 761 (3d Cir. 1996).  Nevertheless, exhaustion of administrative remedies is not required where exhaustion would not promote these goals.  See, e.g., Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998) (exhaustion not required where petitioner demonstrates futility); Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988) (exhaustion may be excused where it "would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable harm"); Carling v. Peters, 2000 WL 1022959, *2 (E.D. Pa. 2000) (exhaustion not required where delay would subject petitioner to "irreparable injury").

14

In Snisky v. Pugh, the petitioner did not deny his failure to exhaust; however, the Court excused exhaustion because the petitioner was scheduled to be released, and his claim was clearly without merit.  See 974 F. Supp. 817, 819 (M.D. Pa. 1997), rev'd on other grounds, 159 F.3d 1353 (3d Cir. 1998).  The court recognized that exhaustion could be excused where it would be futile.  See id.  In Snisky, the court found that the BOP "unequivocally" would deny the petitioner's relief, and he would return to the district court after the denial.  Thus, the court addressed the claims on the merits.

Likewise, in Ferrante v. Bureau of Prisons, the court found that if the petitioner's claim were meritorious, he would be released to a halfway house relatively soon; therefore, dismissing the petition for lack of exhaustion would be futile. See 990 F. Supp. 367, 370 (D.N.J. 1998)(citing Snisky, 974 F. Supp. at 819-20).  Further, the court held that the petitioner's claim was clearly without merit, so that the exhaustion issue need not be reached.  See id.  See also Fraley v. Bureau of Prisons, 1 F.3d 924, 925 (9th Cir. 1993)(stating that exhaustion was not required because it was futile, as Regional Director would "almost certainly" have denied request, and term of imprisonment was completed).

Here, this Court finds that Petitioner did promptly attempt to exhaust his administrative remedies.  There is no evidence of

delay in pursuing the administrative appeals.  However, Respondent claims that the administrative appeal on the rehearing was misdirected by Petitioner's own fault to the Central Office rather than to the Regional Office, and that Petitioner knew the procedure, was informed of the proper procedure, and he failed to properly file his administrative appeals accordingly.  Regardless of this allegation, it is clear that any effort now to have Petitioner exhaust his administrative remedies would be rejected as untimely, and thus, such exhaustion would indeed be futile. Moreover, the record here, as discussed below, shows that Petitioner's claim of procedural due process violations is clearly without merit.  Accordingly, the exhaustion issue need not be reached, especially where to now require Petitioner, at this point, to exhaust his administrative remedies would be futile.  Therefore, the Court will address the merits of this petition.

D.  <u>Merits of Petitioner's Claims</u>

    1.  *There Was No Denial of Procedural Due Process*

The Due Process Clause of the Fifth or Fourteenth Amendments provides that liberty interests of a constitutional dimension may not be rescinded without certain procedural protections.  U.S. CONST. amend. XIV.  In <u>Wolff v. McDonnell</u>, <u>supra</u>, the Supreme Court set forth the requirements of due process in prison disciplinary hearings.  An inmate is entitled to (1) written

notice of the charges and no less than 24 hours to marshal the
facts and prepare a defense for an appearance at the disciplinary
hearing; (2) a written statement by the fact finder as to the
evidence relied on and the reasons for the disciplinary action;
and (3) an opportunity "to call witnesses and present documentary
evidence in his defense when to do so will not be unduly
hazardous to institutional safety or correctional goals." Wolff,
418 U.S. at 563-71.  An inmate is also entitled to an inmate
representative in some cases, and a written decision by the
factfinder as to evidence relied upon and findings. See Von
Kahl, 855 F. Supp. at 1418 (citing Wolff, 418 U.S. at 563-72).
However, in Wolff, the Supreme Court held that, while prisoners
retain certain basic constitutional rights, including procedural
due process protections, prison disciplinary hearings are not
part of criminal prosecution, and an inmate's rights at such
hearings may be curtailed by the demands and realities of the
prison environment. Id. at 556-57; Young v. Kann, 926 F.2d 1396,
1399 (3d Cir. 1991).

    Here, it would appear that Petitioner alleges that he was
denied due process because the DHO refused to view the videotape
of the visiting room where the charged conduct took place.
However, it would appear that Petitioner never made any such
request at either his first DHO hearing or the DHO rehearing.
The first time that the issue of the videotape was made by

Petitioner was on his administrative appeal, not during his DHO
hearings.  Moreover, the DHO attested in a Declaration submitted
herein, that it was the DHO's standard practice to make note of
such requests in his reports, as well as to note the DHO's action
in response thereto.  Neither DHO report shows that a request was
made by Petitioner concerning the videotape.  Likewise, there is
no record of any such request being made to the investigating
officer or the UDC.

Moreover, the lack of any such request by Petitioner in this
instance is strengthened by the fact that Lt. Kaough viewed the
videotape, as noted in the DHO report, yet Petitioner never
requested the presence of Lt. Kaough at his hearings.  Petitioner
apparently concedes that he knew that Lt. Kaough viewed the
videotape, yet Petitioner never requested the Lieutenant as a
witness.  (Petition at Ex. 3, § III.B).

Consequently, there is no evidentiary support for
Petitioner's claim that the "witnessing officer had intentionally
misrepresented the conduct reported."  Petitioner merely and
belatedly requests that the videotape be reviewed.  He fails to
provide any relevant evidentiary support for his claim that the
videotape contains an inconsistent depiction of the incident as
charged.  Thus, the fact that Petitioner never made any request
to call Lt. Kaough or any other witness at his DHO hearings to
support this contention is very telling.

18

Accordingly, this Court finds that Petitioner's claim of "false" information by the witnessing officer is not sufficient to establish a due process violation where the inmate has the opportunity to rebut the allegedly false accusations and evidence.  See McKeathan v. Beard, 2009 WL 908710 at *2 (3d Cir. April 6, 2009).  "[S]o long as certain procedural requirements are satisfied, mere allegations of falsified evidence or misconduct reports, without more, are not enough to state a due process claim."  Smith v. Mensinger, 293 F.3d 641, 653-54 (3d Cir. 2002).  Here, Petitioner has not demonstrated that he was denied the opportunity to call witnesses to rebut the statements of the witnessing officer.  The record demonstrates that Petitioner made no effort to call any witnesses on his behalf at either his first DHO hearing or the rehearing.

Moreover, this Court agrees with Respondent's argument that Petitioner has not demonstrated any due process violation in this instance with regard to the alleged refusal of a videotape review.  Significantly, Respondent points to a federal case where no due process violation was found under similar factual circumstances.  In Dunmore v. Wendt, 2007 WL 1848017 (N.D.W.Va. June 25, 2007), an inmate was charged with assaulting a female visitor in the visiting room.  In challenging the disciplinary action, the inmate alleged that he was prevented from introducing documentary evidence, namely, the DHO had refused to review the

19

videotape of the visiting room incident.  The court found no due process violation, stating:

> Beyond the petitioner's bald assertion, however, there is nothing in the record to indicate that Dunmore asked for a review of the visiting room surveillance video at any time prior to the DHO proceeding.  All relevant documents generated prior to the hearing on January 26, 2005, are silent with regard to the surveillance video.  Further, DHO Livingston's Declaration states that Dunmore never requested that the video be reviewed during the hearing.

Dunmore, 2007 WL 1848017 at *4.

As set forth above, in this case, Petitioner likewise failed to request that the DHO review the videotape of the incident, and there is no material evidence to support a claim that Petitioner ever made such a request at any time before or during his DHO hearing.  The first and only time such a request was made was in Petitioner's administrative appeals.  Such belated request does not rise to the level of a due process violation when it is made for the first time on administrative appeal.  See Donahue v. Grondolsky, 398 Fed. Appx. 767, 771 (3d Cir. 2010).

Further, this Court finds that the recent decision by the United States Court of Appeals for the Third Circuit in Burns v. PA Dept. Of Corrections, 642 F.3d 163 (3d Cir. 2011) is factually distinguishable from this case in a material respect.  In Burns, the inmate had made several requests for review of a surveillance video before and during his state prison disciplinary hearing, and this Petitioner did not do so.  While the Third Circuit held that an inmate's procedural due process rights are violated when

20

a hearing examiner "fails to view all available evidence to
determine its relevance and suitability for use at a disciplinary
hearing," the inmate must first make such a request for review of
evidence to preserve it for the disciplinary hearing.  Burns, 642
F.3d at 174-175 and n. 11.  Here, as stated above, Petitioner did
not make any such request until his administrative appeal.

Therefore, this Court concludes that Petitioner has not
demonstrated any procedural due process violation under Wolff or
Von Kahl in this case to warrant habeas relief under § 2241.

2.  *There Was Sufficient Evidence to Support the Charge*

The Supreme Court has held that procedural due process is
not satisfied "unless the findings of the prison disciplinary
board are supported by some evidence in the record."
Superintendent v. Hill, 472 U.S. 445, 454-55 (1985); Young v.
Kann, 926 F.2d 1396, 1402-03 (3d Cir. 1991).  The Supreme Court
has stated:

> Prison disciplinary proceedings take place in a highly
> charged atmosphere, and prison administrators must
> often act swiftly on the basis of evidence that might
> be insufficient in less exigent circumstances.  The
> fundamental fairness guaranteed by the Due Process
> Clause does not require courts to set aside decisions
> of prison administrators that have some basis in fact.
> Revocation of good time credits is not comparable to a
> criminal conviction, and neither the amount of evidence
> necessary to support such a conviction, nor any other
> standard greater than some evidence applies in this
> context.

Hill, 472 U.S. at 456 (internal citations omitted).  Moreover,
the Court stated:  "The Federal Constitution does not require

21

evidence that logically precludes any conclusion but the one reached by the disciplinary board.  Instead, due process in this context requires only that there be some evidence to support the findings made in the disciplinary hearing."  Id. at 457.

Here, there is sufficient evidence noted by the DHO in reaching his determination.  The DHO's Report demonstrates that the DHO considered and relied upon the incident report and staff memorandum that provided the statements of the officers who had witnessed the incident in the visiting room.  Moreover, the DHO considered Petitioner's two separate and inconsistent statements, which the DHO found to be self-serving and unreliable in light of the witnessing and investigating officers' testimony and evidence.

Consequently, there was more than sufficient evidence presented at the hearing to show that Petitioner had committed the Code 205 violation.   The DHO's Report plainly shows that it was "not so devoid of evidence that the findings of the [DHO were] without support or otherwise arbitrary."  Hill, 472 U.S. at 457.  Petitioner has failed to proffer any sufficiently credible contradictory evidence.  The procedures enunciated in Wolff, supra, were complied with, and there was "some evidence", in accordance with Hill, supra, to support the DHO's finding of guilt.  See Sinde v. Gerlinski, 252 F. Supp.2d 144, 150 (M.D. Pa. 2003)("If there is 'some evidence' to support the decision of the

hearing examiner, the court must reject any evidentiary challenges by the plaintiff")(quoting Hill, 472 U.S. at 457).

Therefore, there is no basis to expunge the incident report and sanctions imposed because Petitioner has not proven that he was denied due process or that there was insufficient evidence to support the disciplinary finding.  Accordingly, this habeas petition will be denied for lack of merit.

### CONCLUSION

Based upon the foregoing, the petition for a writ of habeas corpus under 28 U.S.C. § 2241 will be denied for lack of merit. An appropriate Order accompanies this Opinion.




                         s/ Noel L. Hillman
                         NOEL L. HILLMAN
                         United States District Judge


Dated: June 8, 2012

At Camden, New Jersey